UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARK WYNAR, as guardian of L. W., and L. W., a minor,<br><br>          Plaintiffs,<br><br> v.<br><br>DOUGLAS COUNTY SCHOOL DISTRICT, et al.,<br><br>          Defendants. | 3:09-cv-0626-LRH-VPC<br><br>ORDER |

Before the court is defendants Douglas County School District ("DCSD"); Carol Lark ("Lark"); Nancy Bryant ("Bryant"); Marty Swisher ("Swisher"); David Pyle ("Pyle"); Keith Roman ("Roman"); Sharla Hales ("Hales"); and Cynthia Trigg's ("Trigg") (collectively "defendants") motion for summary judgment. Doc. #26.[1] Minor plaintiff L. W. ("LW") filed an opposition (Doc. #29) to which defendants replied (Doc. #34).

**I.    Facts and Background**

In 2008, plaintiff LW was a student enrolled at the Douglas County High School ("DHS"). On February 5, 2008, LW was instant messaging his friend J, another DHS student. During the conversation, LW threatened several female DHS students and discussed his purported "hit list."

---

[1] Refers to the court's docket number.

LW's messages included the following:

- "no im shooting her boobs off then paul (hell take a 50rd clip) then i reload and take out everybody else on the list hmm paul should be last that way i can get more people before they run away..."
- "and ill probly only kill the people i hate?who hate me then a few random to get the record."
- "that stupid kid from vtech. he didnt do shit and got a record. i bet i could get 50+ people and not one bullet would be wasted."
- "i wish then i could kill more people but i have to make due with what I got. 1 sks & 150 rds, 1 semi-auto shot gun w/ sawed off barrle, 1 pistle."

Doc. #26, Exhibit 3.

Concerned about the content of the messages, J forwarded them to R, another DHS student, who suggested that the messages be brought to the attention of DHS administration. On February 7, 2008, J and R turned the messages in to the school. LW was subsequently arrested and taken out of DHS pending an investigation.

On March 6, 2008, LW was suspended from DHS for ten (10) school days. Shortly thereafter, on March 31, 2008, after an administrative hearing, LW was expelled from the school district for ninety (90) days.

Subsequently, on October 27, 2009, LW filed a complaint against defendants alleging five causes of action: (1) procedural Due Process; (2) substantive Due Process; (3) First Amendment violation; (4) negligence; and (5) negligent infliction of emotional distress. Doc. #1. Thereafter, defendants filed the present motion for summary judgment on all of LW's claims. Doc. #26.

**II.     Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita*

2

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III.  Discussion**

    **A. Procedural Due Process**

Nevada law provides that a student shall not be suspended from school or expelled from the school district until the student has been given notice and an opportunity to be heard. NRS § 392.467(2).

In his complaint, LW argues that defendants violated his procedural Due Process rights when they suspended him from DHS for ten days without a formal administrative hearing. *See*

3

1  Doc. #1. Further, LW argues that defendants did not comply with DCSD's own internal regulation,
2  Administrative Regulation 529, which outlines certain procedures that should be followed prior to
3  suspending a student for ten (10) days or less including telling the student the specific rules,
4  policies, or procedures that the student violated and that there could be consequences for those
5  violations including suspension, because Swisher and Pyle never specifically outlined the exact
6  school policies he violated by sending messages to his friend. *See* Doc. #30, Exhibit 8,
7  Administrative Regulation 529.

8  In opposition, defendants contend that LW received appropriate notice and an opportunity
9  to be heard when individual defendants Marty Swisher ("Swisher"), DHS principal, and David Pyle
10 ("Pyle"), DHS vice-principal, visited LW at the detention center. *See* Doc. #26.

11 The court has reviewed the documents and pleading on file in this matter and finds that LW
12 received appropriate due process prior to his suspension. Initially, the court notes that defendants
13 purported failure to comply with their own administrative procedure does not, itself, constitute a
14 violation of constitutional due process. *See Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984)
15 ("Procedural requirements ordinarily do not transform a unilateral expectation into a
16 constitutionally protected property interest.").

17 Further, due process for school suspensions does not require a formal hearing. *Bd. of*
18 *Curators of Univ. of Missouri v. Horowitz*, 435 U.S. at 86 (full cite). Rather, there must only be an
19 "'informal give-and-take' between the student and the administrative body dismissing him that
20 would, at least, give the student 'the opportunity to characterize his conduct and put it in what he
21 deems the proper context.'" *Id*. For any suspension up to ten (10) days, due process requires only
22 that a student "be given oral or written notice of the charges against him and, if he denies them, an
23 explanation of the evidence the authorities have and an opportunity to present his side of the story."
24 *Goss v. Lopez*, 419 U.S. 565, 581 (1975).

25 Here, viewing the evidence in the light most favorable to LW as the non-moving party, the

4

court finds that LW was given notice of the charges against him and had an opportunity to tell his side of the story. At the meeting between LW and defendants Swisher and Pyle, LW (1) admitted to writing the statements; (2) was expressly advised of the purpose of defendants' visit;[2] (3) was advised that he had violated school policy in writing threatening messages;[3] (4) was informed that additional discipline could be meted out, including suspension;[4] (5) explained to Swisher and Pyle that he was just joking and had no intent to carry out the threats;[5] and (6) wrote a written report outlining his side of the story.[6] Therefore, the court finds that LW received the requisite due process for a ten (10) day school suspension because he had an informal give-and-take with defendants Swisher and Pyle, was informed of the violations of school and district policy in writing threatening messages, and was provided an opportunity to explain his side of the story and write a written statement. Accordingly, the court shall grant defendants' motion as to this issue.

**B. Substantive Due Process**

LW argues that his substantive due process rights were violated when he was expelled from the school district under the habitual discipline statute, NRS § 392.4655. Specifically, LW argues that the school district misinterpreted the statute in order to expel him because it is undisputed that he did not have any prior disciplinary problems and thus, DCSD could not have found that he was a habitual disciplinary problem under the statute.

NRS § 392.4655(1) provides that:

> Except as otherwise provided in this section, a principal of a school shall deem a pupil enrolled in the school a habitual disciplinary problem if the school has written evidence which documents that in 1 school year:

---

[2] Doc. #26, Exhibit 1, LW Depo., p.21:6-7; Doc. #26, Exhibit 4, Swisher Depo., p34:16-18.

[3] Doc. #26, Exhibit 5, Pyle Depo., p.17:9-19.

[4] *Id*.

[5] Doc. #26, Exhibit 1, LW Depo., p.22:6-9.

[6] *Id*.; Doc. #26, Exhibit 11, LW's written statement.

5

      (a) the pupil has threatened or extorted, or attempted to threaten or extort, another pupil or a teacher or other personnel employed by the school;
      (b) the pupil has been suspended for initiating at least two fights on school property, at an activity sponsored by a public school, on a school bus or, if the fight occurs within 1 hour of the beginning or end of a school day, on the pupil's way to or from school; or
      (c) the pupil had a record of five suspensions from school for any reason.

The court has reviewed the documents and pleadings on file in this matter and finds that defendants did not misinterpret the habitual discipline statute. Under the plain language of the statute, a student *shall* be deemed a "habitual disciplinary problem" if the school has written evidence that the student had threatened another student, teacher, or school employee, even if that student had no prior disciplinary problems. NRS § 392.4655(1)(a). The statute does not require multiple threats before a student is deemed a habitual disciplinary problem. *Id*. Further, the fact that other kinds of conduct require multiple acts (two fights or five suspensions) shows the legislature's intent to hold a single act of threatening conduct an expellable offense. Therefore, the court finds that defendants did not violate LW's substantive due process rights by expelling him for a single instance of threatening conduct. Accordingly, the court shall grant defendants' motion as to this issue.

**C. First Amendment**

LW argues that defendants violated his First Amendment rights when they disciplined him for his off-campus speech. *See* Doc. #1.

"The Supreme Court has held that the First Amendment guarantees only limited protection for student speech in the school context." *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 371 (9th Cir. 1996) (citing *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 509 (1969)). A school may discipline or suppress speech if there are sufficient facts for school authorities to reasonably forecast the substantial disruption of, or material interference with, school activities. *Lavine v. Blain Sch. Dist.*, 257 F.3d 981, 989 (9th Cir. 2001) (citing *Tinker*, 393 U.S. at 514); *see also, J.C. v. Beverly Hills Unified Sch. Dist.*, 711 F. Supp. 2d 1094, 1103 (C.D. Cal. 2010) (holding that speech

which causes or is foreseeably likely to cause a substantial disruption of school activities can be regulated and disciplined by the school). A school's regulatory and disciplinary power may be exercised regardless of whether the speech occurred on or off campus. *Poway Unified Sch. Dist.*, 90 F.3d at 371; *Beverly Hills Unified Sch. Dist.*, 711 F. Supp. 2d at 1103 ("[T]he majority of courts will apply *Tinker* where speech originating off campus is brought to school or to the attention of school authorities, whether by the author himself or some other means.").

In determining whether school officials had sufficient facts to reasonably forecast substantial disruption, "alleged threats should be considered in light of their entire factual context, including the surrounding of the events and the reaction of the listeners." *Poway Unified Sch. Dist.*, 90 F.3d at 371. Further, disruption does not have to actually occur before a school regulates or disciplines speech so long as there exists facts "which might reasonably lead school officials to forecast substantial disruption." *Blain Sch. Dist.*, 257 F.3d at 989. Where a student's speech is violent or threatening to members of the school, a school can reasonably portend substantial disruption. *Id*. at 1112; *see also Poway Unified Sch. Dist.*, 90 F.3d at 372 ("In light of the violence prevalent in schools today, school officials are justified in taking very seriously student threats against faculty or other students.").

Viewing the evidence in the light most favorable to LW as the non-moving party, the court finds that defendants had a reasonable basis to forecast a material disruption to school activities. In his messages, LW invoked the image of the Virginia Tech massacre. Doc. #26, Exhibit 3. He stated that he had access to guns and ammunition. *Id*. He wrote about getting "the record" for school shootings and made specific references to girls and the school by name. *Id*. Further, he had a specific date in mind for carrying out his threats, April 20th, the anniversary of the Columbine massacre. Even assuming, as the court must for the present motion, that LW was joking when he made the statements and had no intent to carry out the conduct he described, DHS school administration still had a reasonable basis to forecast a substantial disruption to school activities

upon receiving the statements because there is no inference that can be drawn solely from his statements that he was joking or had no intent to carry out the threats. Therefore, based on the record before the court, the court finds that defendants had a reasonable basis to forecast a substantial disruption to school activities and are thereby entitled to summary judgment on LW's First Amendment claim. Accordingly, the court shall grant defendants' motion as to this issue.

**D.  Negligence and Negligent Infliction of Emotional Distress**

In their motion, defendants argue that there is no evidence supporting LW's claims for negligence or negligent infliction of emotional distress. *See* Doc. #26. LW does not oppose defendants' motion for summary judgment on these issues and effectively concedes that defendants' motion is appropriate. *See* LR 7-2(d) (stating that the failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of that motion). Therefore, the court shall grant defendants' motion as to these issues.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. #26) is GRANTED. The clerk of court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 10th day of August, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE